**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **NO.: 3:23-CR-00119-KAC-JEM** |
| | ) | |
| **BRANDON REECE** | ) | |

<u>**MOTION TO SUPPRESS FRUITS OF ILLEGAL SEIZURE**</u>

The Defendant, Brandon Reece, by and through counsel, pursuant to the Fourth Amendment to the United States Constitution, and Moves this Honorable Court for an Order granting this Motion to Suppress in support of which, Mr. Reece would show as follows:

## I. <u>Introduction</u>

Brandon Reece is charged within the second superseding indictment with six counts, including possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) related to the seizure and subsequent search of a vehicle conducted on November 28, 2023. [Doc. 53]. The investigation surrounding the charges within the Second Superseding Indictment originated with the stop of a vehicle on November 28, 2023, which resulted in the arrest of Brandon Reece by the Knoxville Police Department. Significantly, on November 28, 2023, officers lacked reasonable suspicion to initiate a stop of the vehicle Mr. Reece was driving. Accordingly, all the fruits of the subsequent search of his vehicle are subject to suppression pursuant to the Fourth Amendment to the United States Constitution.

## II. <u>Facts surrounding the seizure, stop, and search of a black Silverado</u>

On November 28, 2023 at 2:05 AM, an officer was sitting in the parking lot of Wallace Memorial Baptist Church at 701 Merchant Drive when he heard what he believed were gunshots.[1] Knoxville Police Department Officer McCurry called into dispatch at approximately 2:05 AM, that he had heard, but did not witness, what he believed to be gunshots.[2] Knoxville Police Department Officers traveled eastbound on Merchant Drive to a bar named The Pint House located at 815 Merchant Drive. Upon arrival at approximately 2:10 AM, officers spoke to two unnamed female witnesses in a black SUV. When asked if the witnesses heard the gunshots, they indicated they came from "that way" indicating across the street toward Clinton Highway. Officer McCurry asked if they saw a maroon pick up and the witnesses responded that "it was a truck" then stating it was a black Dodge Ram. Officers were searching the parking lot of the Pint House when another male witness on scene indicated that the shots were fired across the street from the Pint House in the Austin's Steakhouse parking lot. None of the witnesses gave any physical description of the individual or individuals involved, provided any details regarding the year of the vehicle, or other identifying information. Officers looked for shell casings in the roadway of Merchant Drive and the Austin's Steakhouse parking lot, but no shell casings were ever recovered.

While officers were searching for shell casings, a separate KPD Unit driven by Officer Seders was travelling westbound on Merchant Drive. At approximately 2:16 AM, Officer Seders saw a black Chevrolet Silverado driving westbound ahead of him on Merchant Drive just before the I-75 Interstate intersection. Despite the fact that witnesses

---

[1] CAD Report of Initial Call by KPD Officer McCurry Exhibit 1.
[2] *See* Exhibit 1.

had provided a different make and model vehicle, explained that the vehicle was travelling the opposite direction, and failed to provide any other identifying information, officers pursued the black Silverado and activated their blue lights on the truck. The Knoxville Police Department incident report by Officer Seder indicates that a "traffic stop" of the black Silverado was initiated.[3] Significantly though, there is no mention of any traffic violation that precipitated the stop, only that officers were investigating a call related to shots fired earlier on Merchant Drive involving a black truck.

Body camera footage shows that the Silverado appeared to be following all traffic laws when officers initiated emergency lights and initiated a stop. At that point, the vehicle turned and failed to stop for approximately seventy-five seconds. The Silverado then stopped at Inskip Ballfields, the driver Brandon Reece was arrested, and a search was conducted of the vehicle revealing a 9mm Ruger firearm and two rounds of ammunition.

Officers lacked any articulable reasonable suspicion to initiate a stop of the vehicle. Further, there is no evidence of a traffic infraction that would have warranted stopping the vehicle. Accordingly, the fruits of the illegal seizure and subsequent search are subject to suppression. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

### III. Officer's lacked reasonable suspicion to initiate a stop of the black Silverado

Law enforcement lacked any reasonable suspicion of criminal activity to initiate a *Terry* stop of the black Silverado on November 28, 2023. The truck did not match the description, make, and model of the vehicle officers were looking for, was in an inconsistent location, and was traveling in the opposite direction than that reported by

---

[3] KPD Police Report Narrative attached as Exhibit 2.

witnesses. Additionally, there is no evidence of any traffic violation that would establish probable cause to otherwise authorize a stop of the vehicle.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV. The Fourth Amendment protections include not only the home, but also protections in the "freedom of movement and insulation from the fear and anxiety produced by unlawful seizure." *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004). The Fourth Amendment generally requires a warrant for searches and seizures, however limited exceptions exist, including brief investigatory stops as outlined in *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *Terry* stops are only permitted when there is some "reasonable and objective basis" for suspecting criminal activity. *Id*. This reasonable suspicion must consist of more than a simple hunch but must be based on "specific and articulable" facts. *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008).

Similarly, in order to initiate a traffic stop, an officer must possess probable cause for believing that a traffic violation occurred. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). A Court must examine the reasonableness of a stop based on whether the officer's actions were "justified at its inception" and if the action was reasonably related to the circumstances. *Terry*, 392 U.S. at 88.

The reasonableness of a traffic stop, and of a *Terry* stop, are measured by the same standards set out in *Terry v. Ohio*. *Lyons*, 687 F.3d at 763. Courts are directed to examine the reasonableness of the stop at issue by looking at the totality of the circumstances surrounding the stop. *Richardson*, 385 F.3d at 630. This analysis should consider "all of the information available to law enforcement at the time." *Humphrey v. Mabry*, 482 F.3d

840, 846 (6th Cir.2007). Some relevant circumstances include the officer's "direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Lyons*, 687 F.3d at 763 (internal citations omitted).

A seizure that lacks reasonable suspicion at its inception, however brief, is impermissible and requires suppression. *United States v. Jones*, 562 F.3d 768, 773 (6th Cir. 2009). The exclusionary rule mandating the suppression of all evidence obtained as a result of an unlawful search and seizure was developed in order to "deter law enforcement officials from violating the Fourth Amendment." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008). The exclusionary rule is also supplemented by the fruit of the poisonous tree doctrine which mandates suppression derivatively obtained from an unconstitutional source. *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010).

"Unlawful seizure occurs when an officer without reasonable suspicion by means of physical force or show of authority…in some way restrain[s] the liberty of a citizen." *Richardson*, 385 F. 3d at 629. An individual's liberty is restrained when, under the totality of the circumstances, an individual would no longer feel free to leave the encounter. *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007). Here, the officer speeding up behind the Silverado, initiating emergency lights, and initiating sirens constituted a seizure of Mr. Reece for the purposes of the Fourth Amendment.

Applied to the instant case, the initial stop of the vehicle containing Mr. Reece lacked the necessary reasonable suspicion, based on specific and articulable facts, to initiate a *Terry* stop. At the time the Knoxville Police Department decided to initiate a stop of Mr. Reece, the only information they had was that an officer had heard what he believed

to be gunshots in the area of The Pint House bar. Significantly, that location is placed between a major highway, Clinton Highway, and a major interstate exit at Merchant Drive at I-75. Upon arrival, witnesses indicated a black Dodge Ram Truck had been in the area of The Pint House and Austin's Steakhouse around the time the shots were fired. Witnesses also indicated that the Dodge Ram truck they saw was travelling westbound on Merchant Drive across Clinton Highway away from The Pint House.

A few minutes later, an officer travelling up Merchant Drive saw a black Chevy Silverado, traveling towards the location in question, rather than away as noted by witnesses. The black Chevy Silverado was traveling the speed limit and obeying all traffic regulations. Despite being located in an area inconsistent with witness statements, having an identifiable drive out tag that was not mentioned by witnesses, and being a different make and model than that given by witnesses, officers decided to initiate a stop on the Silverado. This is the epitome of a stop based upon a "hunch" unsupported by specific and articulable facts. *Richardson*, 385 F.3d at 630. Officers stopped the first black truck they encountered in a busy intersection, despite lack of any other identifying information about the individual they were looking for and despite a description of the vehicle that did not match a Chevy Silverado.

When evaluating reasonable suspicion, courts must look at the totality of the circumstances and make a determination on a case-by-case basis. Courts have, however, held similar circumstances to those in this case did not establish reasonable suspicion. In *United States v. Jackson*, the Sixth Circuit held that the vehicle stop lacked reasonable suspicion, noting the officer should "never have stopped Defendant's car in the first place." *United States v. Jackson*, 188 Fed. Appx. 403, 409 (6th Cir. 2006). The *Jackson* Court

noted the fact that the vehicle description given by dispatch (a green BMW) differed significantly from the vehicle stopped (a green Dodge Neon) and pointed to the fact that the vehicle was travelling the opposite direction from what witnesses noted. *Id*. at 409-10. Despite being in the subject area, sharing the same color as the vehicle police were seeking, and being the only green car in the area ten minutes after the incident, the *Jackson* Court held insufficient support for a finding of reasonable suspicion, holding that by that logic, officers would "have been allowed to stop every small green car driving up and down" the street in question, otherwise ignoring the totality of the circumstances. *Id.*

The Fifth Circuit Court of Appeals analyzed a similar set of circumstances in *United States v. Jaquez*, holding a stop was not supported by reasonable suspicion. *United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005). In *Jaquez*, officers received a report of shots fired and were informed that a "red vehicle" was involved. *Id.* Fifteen minutes later, the officers observed a red vehicle travelling away from the area, initiated a stop, and subsequently performed a *Terry* stop of the defendant. *Id.* at 341. The Fifth Circuit held that the stop was unconstitutional, noting that officers had only a description of a red vehicle, no information on make or model, and a fifteen-minute time span between the call of shots fired and the stop of a car in the area. *Id.* The Court noted that such "generic information" was insufficient to establish reasonable suspicion to initiate a *Terry* stop. *Id.*

When officers encountered Mr. Reece's vehicle proceeding on Merchant Drive and abiding all traffic laws, there was simply no reasonable suspicion of criminal activity at that time to initiate a stop of the vehicle. When officers initiated the stop, the only information they had received was that around 2:05 AM, a black truck, identified by witnesses as a black Chevy Silverado, had been involved in a shooting and was traveling

eastbound on Merchant Drive at the time the shots were fired. At 2:16 AM, officers saw a black truck with a different make and model travelling westbound on Merchant Drive and initiated a *Terry* stop. There was insufficient information in this case to establish reasonable suspicion to stop any black trucks on a major roadway or more specifically a black truck with a different description. Further, there was no physical description of the individual the police were searching for or other identifiable information that would have supported the stop of the Silverado in this case.

Additionally, although officer reports indicate that a "traffic stop" was initiated, this is belied by the lack of any mention of a traffic stop when emergency lights were initiated, the lack of any visible infractions of traffic law, and the lack of any traffic related charges upon Mr. Reece's arrest. There was simply no probable cause of a traffic violation that would have otherwise supported the stop of the vehicle. Accordingly, the seizure of Mr. Reece's vehicle by law enforcement was unconstitutional, and as a result the "tainted fruit of the unlawful government conduct" is subject to suppression based upon the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 441 (1984).

**IV. The warrantless search of the black Silverado was unconstitutional**

Even when probable cause to arrest an individual exists, any subsequent search must also be either authorized by warrant or justified under an exception to the warrant requirement. *United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012). The basic premise under the Fourth Amendment is that searches conducted without a warrant are "*per se* unreasonable" subject to only a few very limited exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967).

One recognized exception is a search conducted incident to lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception authorizes the search of the arrestee's person and the area within his immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969). While an arrestee has diminished privacy interests, the Fourth Amendment does not disappear and not every search is automatically permissible based upon an individual's arrest. *Riley v. California*, 573 U.S. 373, 392 (2014).

In outlining the parameters of the search incident to arrest exception, the United States Supreme Court has noted that it protects interests in officer safety and evidence preservation. See *United States v. Robinson*, 414 U.S. 218, 230-34 (1973). The Supreme Court further narrowed the appropriate use of the exception in *Arizona v. Gant* noting that police may search a vehicle incident to a recent occupant's arrest only if: 1.) the arrestee is unrestrained and within reaching distance of the passenger compartment at the time of the search; or 2.) it is reasonable to believe the vehicle contains evidence related to the offense of arrest. *Gant*, 556 U.S. at 351-52. "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* The Court also specifically noted that articles in the passenger compartment are "rarely" in the area an arrestee might reach. *Id.* at 350.

In the instant case, officers lacked any reasonable suspicion to initiate a stop and seizure of the vehicle at the outset, as noted above. After officers initiated emergency lights, they pursued Mr. Reece for approximately seventy-five seconds prior to him stopping his vehicle. Officers indicated that they were then initiating a felony stop based on evading arrest. Body camera footage shows that the Silverado turned into a lit parking area for

Inskip Ballfields where it was placed in park. Officers ordered Mr. Reece to place his hands in the air, exit the vehicle, and walk backward to them. Mr. Reece complied with all these instructions as they were given. Officers then placed him in handcuffs, performed a pat down which did not result in any illegal contraband being seized, and placed him into a Knoxville Police Department vehicle.

At that point, Mr. Reece was secured, handcuffed, and in police custody far from the passenger compartment of the truck. He presented no danger to officers that would require additional search of the vehicle for their safety. Additionally, no contraband or other illegal evidence was found on Mr. Reece's person that would otherwise support a search of the vehicle. He had been placed in custody on probable cause that he had fled from law enforcement. Accordingly, there was no reasonable basis to believe any additional evidence related to the crime, fleeing from law enforcement, would be located in the vehicle.

Despite that, officers proceeded to open all the doors to the Silverado, search the driver area, passenger area, rear passenger areas, and all compartments of the vehicle. Here the search of the vehicle was outside the scope of the incident to arrest exception to the warrant requirement and the fruits of that search are subject to suppression pursuant to the Fourth Amendment to the United States Constitution and *Wong Sun v. United States*, 371 U.S. 471 (1963).

## V.  <u>Conclusion</u>

The stop at issue in this case lacked reasonable suspicion and accordingly was conducted in violation of the Fourth Amendment to the United States Constitution. Accordingly, all evidence seized as fruit of the unlawful seizure and subsequent search is

subject to suppression, including the firearm and ammunition seized following a search of the vehicle. Further, any and all derivative evidence collected following the stop is also subject to suppression as fruit of the poisonous tree pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963).

WHEREFORE, the Defendant, Brandon Reece, respectfully moves this Honorable Court for an Order granting this Motion to Suppress.

RESPECTFULLY SUBMITTED this 29 January 2025.

/s/ Gregory P. Isaacs
GREGORY P. ISAACS, BPR# 013282

/s/ Ashlee B. Mathis
ASHLEE B. MATHIS, BPR# 034342

THE ISAACS LAW FIRM, PLLC
618 South Gay Street, Suite 300
Post Office Box 2448
Knoxville, Tennessee 37901-2448
865.673.4953/ (fax) 673.4950
www.isaacslawfirm.com
gpi@isaacslawfirm.com
abmathis@isaacslawfirm.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing pleading was filed electronically and has been served on counsel of record, pursuant to the Federal Rules of Criminal Procedure, by the U.S.D.C. electronic filing system.

DATED this 29 January 2025.

/s/ Gregory P. Isaacs